**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**July 14, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

DURAYL TYREE VANN,

    Plaintiff - Appellant,

v.

JEFFREY FEWELL, Wyandotte County
Jail Warden, in his individual capacity;
KIMBERLY REID; ABRAHAM
MESLER, Deputy Sheriff, Wyandotte
County Jail, in his individual capacity;
JOHN LOBNER; RYAN SCHULER;
CHARLES PATRICK, Major, Wyandotte
County Jail, in his individual capacity;
SARAH TOMS, Head of Classification
and Disciplinary, Wyandotte County Jail,
in her individual capacity; LARRY
ROLAND, Undersheriff,

    Defendants - Appellees.

No. 25-3076
(D.C. No. 5:20-CV-03200-JAR-GEB)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **MATHESON**, **MORITZ**, and **FEDERICO**, Circuit Judges.

_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Durayl Tyree Vann, proceeding pro se, appeals the district court's grant of summary judgment to defendants on claims that they violated his constitutional rights while he was in pretrial detention in the Wyandotte County Jail ("WCJ").  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

### A.    Factual background

In its order granting summary judgment to defendants, the district court set out a comprehensive summary of the relevant material facts that were either uncontroverted or as viewed in the light most favorable to Vann, relying in substantial part on video recordings taken from jail staff members' body cameras:

> Vann was booked into the WCJ on October 26, 2018, and was released on January 24, 2019.  He has an extensive incarceration and disciplinary history at the WCJ.  His disciplinary history includes, *inter alia*, creating disturbances, inciting a group demonstration, and malingering or faking an illness.
>
> . . .
>
> On October 27, 2018, at 9:07 a.m., Plaintiff was transferred to an F-Pod cell.  Deputy Abraham Mesler was assigned to the F-Pod that night. While Mesler was conducting scheduled pod checks at approximately 7:45 p.m., Plaintiff asked for a paper Inmate Communication Form ("ICF"). Mesler informed Plaintiff that F-Pod did not have any paper forms and that he would have to submit his request electronically at a kiosk.
>
> Plaintiff began yelling loudly through his door demanding a paper ICF at the rest of the inmates in F-Pod and then began kicking at his door.  Other inmates responded to Plaintiff and began joining in by yelling loudly, kicking their doors, and demanding paper ICFs.  This disturbance lasted for approximately one hour, with Plaintiff leading the other inmates in loud and indiscernible yelling with violent pounding on their cell doors.  Plaintiff maintains that at some point he started having chest pains and tried to get the attention of the officers and obtain medical attention.  Bruce Tyner, who was detained in the cell next to Plaintiff, talked with him by their adjoining wall

2

and offered Plaintiff one of his extra ICF forms.  He noticed that Plaintiff was slurring his words and believed he was having medical issues.

Mesler called Acting Sergeant John Lobner at 8:53 p.m. for advice. Mesler and Lobner determined that Plaintiff was attempting to control the rest of the pod by his continued behavior, and that the appropriate course of action was not to accede to his demands.  At this point, Mesler set his bodycam on the countertop at the bottom of the stairs and began recording. At 9:05 p.m., Plaintiff informed Mesler that he was having chest pains, but Mesler perceived no signs of physical distress.  Mesler completed the pod check and called Medical to report Plaintiff's chest pains.  Medical arrived to conduct a medication pass at 9:34 p.m., but could not proceed to dispense medication for nearly 40 minutes because of the disturbance in the pod.

Several deputies attest that at approximately 9:45 p.m., Plaintiff was still creating a disturbance by kicking and yelling, beating on his cell door, and commanding others in F-Pod to do the same.  At this point, Acting Captain Shardale Brown, Acting Sergeant Devin Baird, Lobner, [Defendant Ryan] Schuler, and two other deputies arrived at F-pod and eventually removed Plaintiff from his cell.  Baird was in command of the incident.

Video footage shows the officers enter Plaintiff's cell and observe him lying on the floor still.  WCJ staff place leg restraints on Plaintiff as a precaution.  Lobner performs a sternum rub, at which point Plaintiff becomes responsive and tells them he is having chest pains and demands to speak to Medical.  Plaintiff again shouts to the other inmates that the officers are refusing to contact Medical.  When Medical arrives, Plaintiff continues to shout and is uncooperative with the nurse's efforts to check his vital signs. The officers repeatedly implore Plaintiff to cooperate so that they can help him.  Medical was not able to take all of his vital signs as a result of his failure to cooperate, although the nurse was able to take Plaintiff's blood pressure, which was within normal range.  The nurse recommends that the officers take Plaintiff to the medical clinic for further testing.  But Plaintiff does not stand up when asked, and when the officers try to get him to his feet to move him to a wheelchair, he becomes "dead weight."

In the footage of the incident, Plaintiff is uncooperative, yelling, demanding a different nurse, calling the current nurse "stupid" and "an imbecile" and yelling that they "sent him the B team."  When Plaintiff refuses to walk to the wheel chair, staff decided that due to his size and strength, they should lay him on his stomach and cuff him at the wrists from behind before carrying him down the stairs using a "five man carry" technique to transport him down the stairs to the lower level of the pod.  Plaintiff resists during their attempts to move the hand restraints to his back.  One officer says to "watch

3

his hair" while they are carrying him. According to the officers, this five-man carry technique is trained and taught by law enforcement agencies in Kansas and they determined it was appropriate based on that training under these circumstances.

When staff attempts to talk to Plaintiff, he continues to scream, telling them they are "a piece of shit," he is going to have a field day with this, and that this is a civil suit waiting to happen. Plaintiff yells out to the other inmates, triggering them to yell and kick their doors. Once at the bottom of the stairs, staff repeatedly implore Plaintiff to calm down so that they can place him in a wheelchair. Instead, Plaintiff continues to yell and incite other inmates in the pod, and twists his body. Due to Plaintiff's resistant behavior, the deputies next retrieved a restraint chair and secured Plaintiff in it at 9:58 p.m. It was placed in the intake area for monitoring.

According to the Restraint Chair Monitoring Log, Plaintiff was monitored at 30-minute intervals for approximately two hours. Medical checked and cleared all restraints and straps for proper fit, ensuring that they did not cut off circulation and that there were no cuts or bleeding or injuries to Plaintiff's hands or wrists. Plaintiff was taken to another cell for housing at 12:10 a.m. on October 28, after being evaluated by medical staff again. He was given new bedding, clothes, and towels, as he had urinated on himself while in the restraint chair. The deputies removed the leg and hand restraints at this point with no further incident. The entire pod remained on lockdown through the next day and the inmates in the pod lost their tablet privileges for that day.

After Plaintiff filed a complaint with the WCJ about the October 27–28, 2018 incident, the jail conducted a three-part internal review by staff who reviewed the body camera footage of the incident. First, Captain Andrew Carver reviewed the footage and found that Plaintiff's claims of being beaten, dragged down stairs, and denied medical treatment were not supported by the footage. Next, Major John Russell reviewed the footage and found the claims to be unfounded. Finally, Undersheriff Roland reviewed the complaint and found the allegations were unfounded.

R. vol. I at 263–67.

Based on his conduct during this incident, Vann was charged with multiple violations of WCJ rules. After a hearing before defendant Sara Toms, Vann was found guilty on most of the violations (a malingering violation was dismissed) and

sanctioned to 82 days in disciplinary segregation. Toms also found Vann guilty of other violations based on his conduct on November 1, 2018, and imposed an additional sanction of seven days in disciplinary segregation.

## B.    Procedural history

Vann filed a complaint against 22 defendants under 42 U.S.C. § 1983. After protracted motions practice, two amended complaints, and a pretrial order, the case boiled down to six individual-capacity claims against nine defendants. Those defendants filed a motion for summary judgment based on failure to exhaust administrative remedies and qualified immunity. The district court granted the motion. As relevant to the issues Vann raises on appeal, the district court concluded that (1) Vann failed to exhaust most of a retaliation claim he brought against Toms and three other defendants, (2) Lobner and Schuler were entitled to qualified immunity on Vann's excessive-force claim, and (3) Mesler was entitled to qualified immunity on Vann's claim of deliberate indifference to his medical needs.

Vann appeals.

## II.  Discussion[1]

## A.  *Standard of review*

We review de novo a district court's decision to grant summary judgment, applying the same standard governing the district court. *Rivero v. Bd. of Regents of*

---

[1] This court issued Vann an order to show cause regarding appellate jurisdiction. Vann filed a response, which shows he properly deposited his notice of appeal in the prison's internal mail system before the deadline to appeal. *See* Fed. R. App. P. 4(c)(1). We therefore have jurisdiction over this appeal.

*Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We view all facts and evidence in the light most favorable to the party opposing summary judgment." *Craft Smith, LLC v. EC Design, LLC*, 969 F.3d 1092, 1099 (10th Cir. 2020) (internal quotation marks omitted).

Because Vann represents himself, we construe his filings liberally, but we may not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## B. *Analysis*

On appeal, Vann argues that he exhausted his administrative remedies and that Lobner, Schuler, and Mesler were not entitled to qualified immunity. We address these issues in order.[2]

## 1. Failure to exhaust

In his appellate brief, Vann advances a conclusory argument that he in fact "exhaust[ed] all administrative" remedies for his claims, Aplt. Opening Br. at 3, and he invites us to look at "exhibits attached to [his] brief opposing summary judgment as well as exhibits included in the Martinez Report," *id.* at 4. Vann's argument is no

---

[2] Vann purports to raise another issue—the district court erroneously found that he failed to comply with local rules governing the length of briefs. But the district court ultimately allowed and considered Vann's overlength brief, so there is no issue for us to resolve.

more than "a generalized assertion of error," which "disentitle[s] him to review by this court," *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005). *See also United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (explaining that we do not consider "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" (internal quotation marks omitted)). Further, the exhibits Vann asks us to review are voluminous, and he has not identified with any specificity which portions of them demonstrate that the district court erred in concluding that he failed to exhaust most of his retaliation claim. "Without a specific reference, we will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury." *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (internal quotation marks omitted).

## 2. Qualified immunity

Where, as here, a defendant raises qualified immunity as a defense on summary judgment, the plaintiff must "demonstrate (1) that the [defendant] violated a statutory or constitutional right, *and* (2) that the right was clearly established at the time of the challenged conduct." *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1217 (10th Cir. 2024) (internal quotation marks omitted). And where, as here, the record contains video recordings capturing the events in question, we "view[] the facts in the light depicted by the video[] [recordings]." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

7

### a. Excessive force

Vann alleged that Lobner and Schuler used excessive force when they assaulted and battered him, dragged him down a flight of stairs, and assaulted him again at the bottom of the stairs by pushing his face into the concrete floor and twisting his ankles. He also alleged that one of these defendants placed his knees on Vann's throat while twisting Vann's ankles, that Vann could not breathe and was begging them to stop, and that they placed Vann in a restraint chair without restroom access for longer than regulations permit.

Because Vann was a pretrial detainee, this claim is governed by the Fourteenth Amendment's Due Process clause. *See Rowell v. Bd. of Cnty. Comm'rs*, 978 F.3d 1165, 1171 (10th Cir. 2020). Therefore, to establish a constitutional violation for purposes of the first qualified-immunity prong, Vann must show that each defendant "purposely or knowingly us[ed] force against [him] that [was] 'objectively unreasonable'" in light of "the 'facts and circumstances of [his] particular case.'" *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). The determination whether force was objectively unreasonable must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397. And a court must "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (brackets and internal

quotation marks omitted).  Relevant considerations include (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or to limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; and (6) "whether the plaintiff was actively resisting."  *Id.*

Applying this standard, and again relying heavily on the video evidence, the district court concluded Lobner and Schuler's conduct was not objectively unreasonable, "particularly when viewed in light of their past experience with Plaintiff as a detainee at the facility, which included a lengthy disciplinary history." R. vol. I at 279.  The court recounted that Vann was uncooperative and resistant, refused to walk to a wheelchair, and verbally abused jail staff.  And the court observed that no one placed a knee on Vann's neck and that WCJ medical records showed he did not sustain any serious injury from the use of force.

Having reviewed the video recordings along with the other record evidence, we are unpersuaded by Vann's limited contentions on appeal that the district court's analysis and conclusion was wrong.  Contrary to his assertion, the video evidence shows Vann was carried down the stairs, not dragged.  Vann contends that (1) the video recordings do not clearly show that he was among the many inmates yelling and banging on their cell doors, and (2) he spit up blood during the incident.  We agree with the first of these contentions and may assume for the sake of argument that the second contention is true.  Nonetheless, we conclude that there is no genuine

9

issue of material fact that the amount of force used was objectively reasonable under the *Kingsley* factors.[3]

Next, we agree with the district court that even if there was a genuine issue of material fact as to whether Vann could demonstrate a constitutional violation, he did not show that Lobner and Schuler's conduct violated clearly established law.   Before the district court, Vann did not identify any precedent that squarely governs the specific facts at issue in this case.  *See Kisela v. Hughes*, 584 U.S. 100, 104 (2018) ("Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent *squarely governs* the specific facts at issue." (emphasis added) (internal quotation marks omitted)).  On appeal, Vann fails to identify any precedent, much less any that squarely governs the facts of this case.  Thus, he fails to show reversible error in the district court's conclusion on the second prong of the qualified-immunity analysis.

### b.  Deliberate indifference to medical needs

Vann asserted that Mesler was deliberately indifferent to his medical needs based on the following allegations, which are drawn from the operative, verified

---

[3] Vann also contends that "defendants" violated WCJ's restraint-chair policy when they made him sit in his own "waste as a form of retaliation."  Aplt. Opening Br. at 6.  But according to the governing pretrial order, Vann's retaliation claim involving this allegation was against Shardale Brown, not defendants Lobner or Schuler.  *See* Suppl. R vol. I at 35; *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (pretrial order supersedes pleadings and controls ensuing course of litigation).  The district court dismissed Vann's claims against Brown as untimely. *See* Suppl. R. vol. II at 95–103.  Vann has not challenged that ruling.

second amended complaint, *see* Suppl. R. vol. I at 7–32, and Vann's sworn filings in opposition to defendants' motion for summary judgment, *see id.* at 50–248; *id.* vol. II at 7–78.  During the October 27, 2018, incident recounted above, Vann experienced severe chest pains, numbness of the limbs, and slurred speech.  He repeatedly asked Mesler, who knew Vann was a medically at-risk inmate, to call for medical treatment, but Mesler delayed doing so for more than an hour.  Vann lost consciousness, which led to Lobner, Schuler, and others taking him from his cell and carrying him down the stairs.  It was later determined that he "may have had a slight heart attack or stroke."  Suppl. R. vol. I at 17.

"The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care owed to convicted inmates under the Eighth Amendment."  *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 647 (10th Cir. 2017). A prison guard who intentionally delays access to medical care can be found liable for violating this constitutional guarantee.  *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).  But to succeed on such a claim, a plaintiff must show the guard engaged in "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (internal quotation marks omitted).  The deliberate-indifference "standard includes both an objective component and a subjective component."  *Id.*

Applying these standards, the district court concluded that Vann could not show a disputed issue of material fact regarding either component of the test for

deliberate indifference and therefore could not demonstrate that Mesler had violated his constitutional rights. We agree.[4]

### 1) Objective component

"To establish the objective component of the deliberate-indifference standard, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension." *Id.* at 989–90 (internal quotation marks omitted). Where a plaintiff's claim rests on allegedly delayed medical care, a plaintiff satisfies the objective component only if he "show[s] that the delay resulted in substantial harm." *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted).

The district court concluded that Vann could not satisfy the objective component because, as the video evidence and jail records made clear, when the nurse attended to him in his cell, Vann's "blood pressure was within normal range, despite his failure to cooperate with the nurse's ability to take all of his vital signs," and there was "no record that he suffered from lifelong handicap, permanent loss, or considerable pain that resulted from the delay in medical treatment." R. vol. I at 282.

---

[4] The district court did not reach the second prong of the qualified-immunity test. Because we conclude that Vann cannot satisfy the first prong, we also do not reach the second prong.

On appeal, Vann argues that because of Mesler's delay in calling for medical treatment, he suffered "serious substantial harm to the point that he was found unconscious in his cell (which was later determined by outside doctors that [he] had suffered a small stroke and heart attack)," and he "now suffers from a lifelong handicap of drooping facial muscles and weakness to the left side of his entire body." Aplt. Opening Br. at 7.

We may assume for purposes of argument that Vann's claimed chest pains amounted to substantial harm and he therefore satisfied the objective component of the deliberate-indifference standard. *See Mata*, 427 F.3d at 754 ("[S]evere chest pain, a symptom consistent with a heart attack, is a serious medical condition under the objective prong of the . . . deliberate indifference standard."). But Vann has not satisfied the subjective component of that standard.

### 2) Subjective component

"The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind." *Mata*, 427 F.3d at 751. "The subjective component is satisfied if the official knows of and disregards an excessive risk to inmate health or safety." *Id.* (internal quotation marks omitted). Importantly, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (alteration and internal quotation marks omitted).

The district court concluded that Vann failed to satisfy the subjective component based on Mesler's attestation that when he checked on Vann, Vann "did

13

not appear to be in distress," and when "officers entered [Vann's] cell, they immediately tended to him, giving him a sternum rub and sitting him up so the nurse could check his vitals." R. vol. I at 283.

On appeal, Vann argues that Mesler stated in his affidavit that he denied Vann "medical attention because he thought [Vann] was malingering," an offense Vann notes he "was never found guilty of." Aplt. Opening Br. at 7. Vann evidently bases this argument on Mesler's statement that when Vann complained to him "[f]or the first time that evening" about chest pains around 9:05 p.m., Mesler "could see no signs of physical distress" and thus "completed the pod check" before calling for medical assistance. R. vol. III at 56, ¶ 13. Rather than advancing Vann's argument, however, this fact supports Mesler's statement that he lacked the requisite state of mind—he did not draw the inference that Vann faced a serious risk of harm but instead inferred that Vann was faking. To the extent Vann complained to Mesler about chest pains earlier than this (as he alleged in his sworn filings), and regardless of whether, according to Vann, Mesler never called for medical assistance,[5] we reach the same conclusion—Vann fails to show that Mesler drew the required inference. Accordingly, Vann failed to present evidence establishing the subjective component of the deliberate indifference standard.

---

[5] Vann contends that "the affidavit of [Nurse] Dee Dee Gregory stated that no medical call was ever made by . . . Mesler to any nurses station or medical office, nurse, or official at any time that day or night." Aplt. Opening Br. at 7. But Gregory's affidavit contains no such statement. *See generally* R. vol. III at 425–27.

### III.  Conclusion

The district court's judgment is affirmed.  Vann's motion to proceed on appeal without prepayment of costs or fees is granted, and we remind Vann of his obligation to make partial payments until the entire fee has been paid.  *See* 28 U.S.C. § 1915(a)(1) (excusing only "prepayment of fees").

Entered for the Court


Nancy L. Moritz
Circuit Judge